# Illinois Official Reports

## Appellate Court

---

**People v. Canizalez-Cardena, 2020 IL App (4th) 180212**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE CANIZALEZ-CARDENA, Defendant-Appellant. |
| District & No. | Fourth District<br>No. 4-18-0212 |
| Filed | May 29, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 10-CF-1664; the Hon. Heidi N. Ladd, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Michael Gomez, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion.<br>Justices Cavanagh and Holder White concurred in the judgment and opinion. |

**OPINION**

¶ 1        On March 1, 2018, during the second stage of proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2018)), the trial court vacated an order it entered in October 2016 that granted defendant, Jose Canizalez-Cardena, leave to file a successive postconviction petition. Defendant appeals on several grounds. Defendant first argues the trial court's decision during the second stage of proceedings to vacate its order granting defendant leave violated the Act and denied him due process because the decision was made without notice, a meaningful opportunity to be heard, or any proceedings in open court. Defendant also argues his postconviction counsel failed to provide reasonable assistance because his attorney failed to properly amend defendant's petition to allege cause and abandoned defendant's actual innocence claim. Finally, defendant argues this court should remand his case to the trial court for new second-stage postconviction proceedings before a different judge. We reverse the trial court's March 2018 order, remand this case for new second-stage proceedings under the Act, and order the trial court to appoint a new attorney to represent defendant.

¶ 2                                    I. BACKGROUND

¶ 3        In September 2010, the State charged defendant with unlawful possession with intent to deliver 900 grams or more of a substance containing methamphetamine, a Class X felony. 720 ILCS 646/55(a)(1), (a)(2)(F) (West 2010).

¶ 4        At a December 2010 suppression hearing on defendant's challenge to the constitutionality of the search of the suspect vehicle, Trooper Chris Owen of the Illinois State Police testified he stopped a vehicle for speeding. The vehicle met the description of a car he had been told might be transporting methamphetamine. Leonel Galaviz-Galaviz was driving the vehicle, and defendant was the only passenger. Defendant was overly nervous. His carotid artery pulsed, he stared straight ahead, and his hands were trembling. Owens testified he could smell air fresheners and saw several in the car, which from his experience indicated the possibility drugs were in the vehicle. In Spanish, Owens asked defendant to get out of the car and stand in the ditch. Defendant had a phone in his pocket that rang constantly.

¶ 5        According to Trooper Owens, when he let his police canine out of the squad car to smell the suspect vehicle, defendant turned his body and appeared to be praying. The driver later provided consent to search the vehicle, and the police found 2236.1 grams of methamphetamine.

¶ 6        Both defendant and Galaviz were represented by the same trial counsel and were tried at the same time in a stipulated bench trial. At the stipulated bench trial, defendants stipulated Trooper Owens would testify consistent with his earlier testimony, would be qualified as an expert in narcotics trafficking and interdiction, and would testify the amount of methamphetamine found in the vehicle indicated an intent to deliver and the multiple cell phones in the car, including two in defendant's possession, indicated drug sales.

¶ 7        Defendants also stipulated to postarrest statements made by Galaviz, who told the police he could not find work in Los Angeles and was hired by a friend, Jose Valle, to drive the suspect vehicle from Los Angeles to Chicago and deliver the vehicle to an individual Galaviz did not know for $4000. Galaviz believed the vehicle belonged to Valle's brother, Francisco

Valle. Galaviz never communicated with the person to whom he was to deliver the car, whom he only knew as "the Cuban." When Galaviz and defendant arrived where they were directed to go, they waited three hours. Jose Valle then called Galaviz to tell him "the Cuban" was there. Galaviz and defendant then followed "the Cuban" for about an hour and a half.

¶ 8 Trooper Owen believed Galaviz's story to be implausible, as Galaviz was off-route from where he said he was going and could not specify from where in Illinois he had been. Galaviz said he and defendant had known each other for about six months before their arrest, having met working construction. Galaviz and defendant shared the driving duties on the trip. Galaviz told the police he did not know defendant, Jose Valle, or Francisco Valle to be involved in drug trafficking. Galaviz also claimed he did not know about the methamphetamine in the vehicle.

¶ 9 The trial court found both Galaviz and defendant guilty of unlawful possession with intent to deliver methamphetamine. Based on the evidence presented, the court found both Galaviz and defendant were aware of the presence of the methamphetamine in the vehicle. In July 2011, the trial court sentenced defendant to 25 years in prison.

¶ 10 In his direct appeal, defendant argued the evidence presented at the stipulated bench trial was insufficient to prove his guilt beyond a reasonable doubt, the trial court erred in denying his motion to suppress evidence, and the court considered improper factors when it sentenced him. *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 1, 979 N.E.2d 1014. This court found a rational trier of fact could have found the State proved defendant's guilt beyond a reasonable doubt, the trial court did not err in denying defendant's motion to suppress, and the court did not err in sentencing defendant. *Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶¶ 15, 17, 19, 24.

¶ 11 In April 2013, defendant filed a *pro se* petition for postconviction relief pursuant to the Act. Defendant claimed his trial counsel had a conflict of interest because he represented both defendant and Galaviz in the trial court even though defendant's and Galaviz's involvement, knowledge, and culpability were different. Defendant stated Galaviz told police he asked defendant to go with him on a road trip to look for work so Galaviz did not have to drive alone. Galaviz also told police he received payment to drive the car to Illinois but defendant did not know this. According to defendant, his trial counsel had a duty to make an offer on his behalf to have Galaviz testify about this exonerating information. Defendant also claimed his trial counsel failed to argue at sentencing that defendant was less culpable then Galaviz and that a disparity existed regarding their knowledge of the crime.

¶ 12 In July 2013, the trial court found defendant had not shown an actual conflict of interest existed in defense counsel's joint representation that adversely affected defense counsel's representation of defendant. The court noted defendant's claim of an actual conflict of interest was not supported by any specific defect in his trial counsel's representation. The court also found defendant failed to demonstrate a basis to find Galaviz would have waived his right against self-incrimination and accepted sole responsibility for the offense had Galaviz been represented by a different attorney. The court stated both defendant and Galaviz denied knowledge of the drugs and neither accused the other of committing the offense. The trial court dismissed the petition as frivolous and patently without merit.

¶ 13 Defendant appealed the summary dismissal of his postconviction petition, arguing his petition stated the gist of a constitutional claim his trial counsel was ineffective because counsel's representation of both Galaviz and defendant created an actual conflict of interest

adversely affecting his performance. According to defendant, counsel did not challenge the evidence as applied to defendant, capitalize on Galaviz's statements that defendant claimed were exculpatory to him, and argue at sentencing defendant was less culpable and had less knowledge of the methamphetamine than Galaviz. *People v. Canizalez-Cardena*, 2015 IL App (4th) 130680-U, ¶ 23. This court did not address defendant's claim his trial counsel was ineffective based on his joint representation because the issue could have been, but was not, raised on direct appeal. Defendant did not include a claim his appellate counsel was ineffective for failing to raise the argument on direct appeal in his postconviction petition. This court found defendant could not raise the issue of his appellate counsel's ineffectiveness for the first time on appeal. *Canizalez-Cardena*, 2015 IL App (4th) 130680-U, ¶ 29. This court did note defendant could raise the issue in a successive postconviction petition if he could satisfy the cause and prejudice test. *Canizalez-Cardena*, 2015 IL App (4th) 130680-U, ¶ 30.

¶ 14    On October 17, 2016, defendant filed a *pro se* successive petition for postconviction relief. Within his petition, citing *People v. Tidwell*, 236 Ill. 2d 150, 923 N.E.2d 728 (2010), defendant asked the trial court for leave to file his successive petition. Defendant's successive petition claimed his appellate counsel in his direct appeal was ineffective and his ineffectiveness resulted in the forfeiture of nonfrivolous claims.

¶ 15    According to defendant, his appellate counsel failed to make an actual innocence argument even though Galaviz had made statements exonerating defendant from knowing about the transportation of the illegal drugs. His appellate counsel also failed to argue his trial counsel was ineffective and operated under a conflict of interest by representing both Galaviz and defendant. Defendant also took issue with his appellate counsel's failure to challenge the stipulations trial counsel made. According to defendant, without these stipulations, the State did not have sufficient evidence to prove him guilty beyond a reasonable doubt. Further, defendant argued his trial counsel's actions were not supported by any reasonable strategy. Finally, defendant argued his codefendant's statements established his actual innocence.

¶ 16    On October 25, 2016, the trial court allowed defendant leave to file his successive postconviction petition and appointed the public defender's office to represent defendant.

¶ 17    On January 27, 2017, defendant's appointed counsel filed an amended successive motion for postconviction relief. Appointed counsel noted he reviewed defendant's *pro se* successive petition and was adopting and incorporating defendant's *pro se* petition because it adequately outlined defendant's constitutional claims. Appointed counsel argued defendant was denied the effective assistance of his trial counsel because of a lack of effective communication between defendant, who only spoke Spanish, and his trial counsel. While his trial counsel had an interpreter, the interpreter did not speak fluent Spanish, and defendant did not understand the translator. The petition alleged defendant was illiterate in both Spanish and English. Because defendant could not appropriately communicate with his trial counsel, he did not understand the ramifications of having the same attorney as his codefendant, waiving his right to a jury trial, and agreeing to the stipulations at his bench trial. Defendant also did not understand he could have his own trial instead of being tried with Galaviz.

¶ 18    On March 9, 2017, the State filed a motion to dismiss the amended postconviction petition. On May 24, 2017, without reaching the arguments made by the State other than its argument defendant's appointed counsel could not incorporate defendant's *pro se* petition in the amended petition as an exhibit, the trial court allowed the State's motion but gave defendant

leave to file a second amended successive postconviction petition without incorporating defendant's *pro se* petition.

¶ 19 On June 29, 2017, a different assistant public defender entered his appearance for defendant and filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) and a second amended successive postconviction petition. The second amended successive petition for postconviction relief alleged defendant's appellate counsel in his direct appeal was ineffective because counsel failed to raise prejudicial errors made by defendant's trial counsel. According to the petition, trial counsel was ineffective because he (1) only had three communications with defendant, all in the presence of Galaviz, and with an inadequate translator; (2) pursued an unreasonable trial strategy that the amount of drugs in the vehicle was sufficient to impute an intent to deliver even though defendant told his attorney he was innocent; and (3) had an actual conflict of interest in representing defendant and his codefendant. Defendant's appointed counsel did not include defendant's actual innocence claim in the second amended successive postconviction petition, noting counsel did not believe defendant's claim could meet the pleading requirements.

¶ 20 On August 14, 2017, the State filed a motion to dismiss the second amended successive petition for postconviction relief.

¶ 21 On March 1, 2018, the trial court found it erred in granting defendant leave to file his successive postconviction petition without defendant filing a motion separate from the successive petition itself requesting leave. The court also noted it had not made a finding defendant had complied with the "cause and prejudice" test. Further, while defendant's petition had mentioned "actual innocence," it did not allege any facts supporting a claim of actual innocence. The court also stated defendant's second amended successive postconviction petition conceded defendant did not have a legal basis for an actual innocence claim. According to the court, because leave should not have been granted, the court could not consider the merits of defendant's successive petition. The court then dismissed the successive postconviction petition filed on January 27, 2017, and vacated the appointment of the Champaign County Public Defender's Office.

¶ 22 This appeal followed.

¶ 23                                                    II. ANALYSIS

¶ 24 We first address defendant's argument the trial court erred on March 1, 2018, during second-stage postconviction proceedings, when it vacated its October 25, 2016, order granting defendant leave to file a successive postconviction petition. According to defendant, the court's ruling was improper and unauthorized under the Act.

¶ 25 Citing *People v. Mink*, 141 Ill. 2d 163, 565 N.E.2d 975 (1990), and *People v. Johnson*, 2017 IL 120310, 77 N.E.3d 615, the State argues a trial court has an inherent power to reconsider and correct its own rulings while the case remains pending before it. In this case, because defendant's successive postconviction petition was still pending in the trial court, the State argues the trial court had the ability to change its earlier rulings. While generally true, based on the facts in this case, the trial court erred in doing so here.

¶ 26 In *Mink*, our supreme court did state a trial court in a criminal case has the inherent authority to reconsider and correct its own rulings, both interlocutory and final, as long as the court retains jurisdiction, regardless of whether a statute or rule grants the court such authority.

*Mink*, 141 Ill. 2d at 171. However, *Mink* is distinguishable from the situation here because *Mink* did not involve proceedings under the Act. The supreme court's focus in *Mink* was on the trial court's decision to grant the State's motion to reconsider the trial court's earlier order granting the defendant's posttrial motion.

¶ 27 Unlike *Mink*, *Johnson* did involve the Act but not a successive petition. In *Johnson*, the trial court initially summarily dismissed the defendant's postconviction petition because it was untimely and did not allege facts showing the delay was not due to the defendant's culpable negligence. *Johnson*, 2017 IL 120310, ¶ 4. The defendant appealed, and the appellate court reversed the dismissal and remanded the case to the trial court for second-stage proceedings. *Johnson*, 2017 IL 120310, ¶ 4. On remand, the defendant's appointed counsel filed a motion to allow the defendant's petition to be filed late. *Johnson*, 2017 IL 120310, ¶ 5. Judge Vecchio granted defendant's motion. Thereafter, the case was assigned to Judge Wilt in January 2012. *Johnson*, 2017 IL 120310, ¶ 7.

¶ 28 The following October, the State filed a motion to dismiss the defendant's petition. The State acknowledged the timeliness issue had already been decided by Judge Vecchio's prior ruling but included the issue in its motion to dismiss to avoid forfeiture. The State noted it disagreed with the due date for the petition as argued by the defendant and also argued the defendant had failed to make a substantial showing of a constitutional violation. *Johnson*, 2017 IL 120310, ¶ 8. Judge Wilt granted the State's motion and dismissed the defendant's petition in September 2013, finding the petition was untimely and the claims meritless. *Johnson*, 2017 IL 120310, ¶ 9. On appeal, the trial court's dismissal order was affirmed because the petition was untimely and the defendant was culpably negligent in not timely filing the petition. The court also found Judge Wilt had the authority to reconsider Judge Vecchio's prior order regarding timeliness. *Johnson*, 2017 IL 120310, ¶ 10. The defendant appealed the decision to our supreme court, which stated:

"As defendant acknowledges and as the appellate court found, a court in a criminal case has the inherent power to reconsider and correct its rulings, and this power extends to interlocutory rulings. [*Mink*, 141 Ill. 2d at 171.] Judge Vecchio's ruling regarding the timeliness of defendant's petition was an interlocutory order that Judge Wilt had the power to review and reconsider. See *Catlett v. Novak*, 116 Ill. 2d 63, 68[, 506 N.E.2d 586, 589] (1987) (an interlocutory order can be reviewed, modified, or vacated at any time before final judgment). Accordingly, we find no error in Judge Wilt's reconsideration of Judge Vecchio's prior order." *Johnson*, 2017 IL 120310, ¶ 33.

¶ 29 However, the situation here is different than the situation in *Johnson* and appears to be an issue of first impression. Based on our review of other cases decided by our supreme court, we hold a trial court's order granting a defendant leave to file a successive postconviction petition is not an interlocutory order that may be reversed once the State has filed a motion to dismiss the successive petition.

¶ 30 Our supreme court has made clear postconviction proceedings "are *sui generis*, and for that reason general civil practice rules and procedures apply only to the extent they do not conflict with the [Act]." *People v. Bailey*, 2017 IL 121450, ¶ 29, 102 N.E.3d 114. In *Johnson*, both the initial ruling and the ruling reversing the initial ruling occurred during the second stage of postconviction proceedings. In the case *sub judice*, the trial court granted defendant leave to file his successive postconviction petition, the petition was then filed, and the case proceeded to the second stage of proceedings under the Act. During these second stage proceedings, the

State filed two motions to dismiss before the court vacated its decision to give defendant leave to file his successive petition.

¶ 31 Our supreme court has determined the State should not be allowed to participate in the trial court's determination whether to grant or deny a defendant's request for leave to file a successive postconviction petition. *Bailey*, 2017 IL 121450, ¶ 24. Instead, whether to grant leave is to be determined as a matter of law by the trial court based on the pleadings and supporting documentation provided to the court by the defendant. *Bailey*, 2017 IL 121450, ¶ 24. In making this determination, a court must remember a petitioner is not required to conclusively establish "cause and prejudice" before the trial court grants the petitioner leave to file his successive petition. Otherwise, the three-stage postconviction process would be "superfluous." *Bailey*, 2017 IL 121450, ¶ 22 (citing *People v. Smith*, 2014 IL 115946, ¶¶ 28-29, 21 N.E.3d 1172).

¶ 32 In this case, the State did not attempt to participate in the initial determination by the trial court to grant defendant leave to file his successive petition. However, the trial court vacated its decision to grant defendant leave to file his successive postconviction petition after the State filed two motions to dismiss defendant's successive petition. As a result, under these facts, we hold the trial court erred in vacating its decision granting defendant leave to file a successive petition.

¶ 33 We also note the trial court's reasoning for vacating its earlier decision granting defendant leave was flawed. The court ruled it erred in giving defendant leave to file his successive petition because defendant did not file a separate motion requesting leave. Our supreme court in *Tidwell*, 236 Ill. 2d at 158, held a defendant is not required to file a separate motion for leave to file a successive postconviction petition but only has to receive leave of court. In this case, defendant did receive leave from the trial court to file his petition.

¶ 34 Because the trial court erred in vacating its prior ruling granting defendant leave to file his successive postconviction petition, we remand this case for second-stage proceedings under the Act. Because the court vacated its order appointing the public defender to represent defendant, we order the trial court to appoint new counsel to represent defendant. Based on these rulings, we need not consider defendant's arguments he was denied due process and his postconviction counsel provided unreasonable assistance.

¶ 35 However, we do deny defendant's request to replace Judge Ladd with a different trial judge on remand. Although Judge Ladd erred in vacating her decision granting defendant leave to file his successive petition, we do not find defendant will be prejudiced if Judge Ladd remains the trial judge in this case. See *People v. Hall*, 157 Ill. 2d 324, 331, 626 N.E.2d 131, 133 (1993).

¶ 36                                   III. CONCLUSION

¶ 37 For the reasons stated, we reverse the trial court's order vacating its previous order granting defendant leave to file his successive postconviction petition, remand this case to the trial court for second-stage postconviction proceedings, and direct the trial court to appoint a new attorney to represent defendant.

¶ 38 Reversed and remanded with directions.